LAKE HINSDALE VILLAGE CONDOMINIUM ASSOCIATION, Plaintiff-Appellee, v. THE DEPARTMENT OF PUBLIC AID, Defendant-Appellant (Heirs of Bernard F. DaSilva, Deceased, et al., Defendants).

Second District    No. 3—97—0500

Opinion filed July 20, 1998.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and John P. Schmidt and Jill A. Dougherty, Assistant Attorneys General, of counsel), for appellant.

Peter H. Jagel and Gabriella R. Comstock, both of Knuckles & Jagel, of Naperville, for appellee.

JUSTICE McLAREN delivered the opinion of the court:

Plaintiff, the Lake Hinsdale Village Condominium Association (the Association), sued under section 9 of the Condominium Property Act (Act) (765 ILCS 605/9 (West 1996)) to foreclose a lien for unpaid common expense assessments. Bernard and Wilhermina DaSilva, both deceased by the time of the suit, originally owned the unit. Defendant, the Department of Public Aid (Department), also asserted a lien against the property for medical assistance payments it made to or on behalf of Wilhermina DaSilva. Relying on section 3—10 of the Illinois Public Aid Code (Code) (305 ILCS 5/3—10 (West 1996)), the Department claimed it could satisfy its lien from the foreclosure proceeds before the Association could do so to recover any condominium assessments that came due after the Department recorded its lien. The remaining defendants having defaulted, the Association moved for summary judgment. The trial court granted the motion, ruling that the Association's lien was wholly prior to the Department's because the initial default that triggered section 9 of the Act occurred before the Department recorded its lien.

The Department appeals. It argues that the trial court erred in (1) giving the Association's lien priority insofar as it is based on assessments that came due after the Department recorded its lien, and (2)

holding that various incidental expenses, beyond the overdue assessments, were included in the Association's prior lien.

We agree in part with the trial court and in part with the Department. We hold that (1) the Association's lien for unpaid assessments has priority over the Department's lien, even as to assessments for the months after the Department recorded its lien; (2) the statutory lien does not extend to expenses other than those specifically listed in subsection 9(g)(1) of the Act (765 ILCS 605/9(g)(1) (West 1996)); and (3) the trial court must determine the amount of reasonable attorney fees and other incidental expenses due under the Association's statutory lien. We affirm in part, reverse in part, and remand for a determination of the precise value of the Association's lien.

The Association's foreclosure complaint, filed May 10, 1996, alleged the following facts. On October 25, 1994, the Association filed a notice of its lien claim with the Du Page County recorder of deeds. The Association asserted that Bernard and Wilhermina DaSilva owed the Association $2,487.09 and that the Association had a lien for this amount. On November 21, 1994, the Association took possession of the unit via a forcible entry and detainer judgment. The total due from the unit owners through May 6, 1996, was $14,565.33 plus "interest and assessments accrued hereinafter, advances for real estate taxes, storage fees, cleaning fees, insurance, court costs, title costs, etc., and [the Association's] attorneys fees."

The Association added the Department as a defendant; the other defendants were defaulted. The Department claimed that it had a lien against the property for $95,616.38 it paid to or on behalf of Wilhermina DaSilva in medical assistance pursuant to article V of the Code (305 ILCS 5/5—1 et seq. (West 1994)). The Department claimed that its lien had priority over the Association's lien insofar as the latter secured debt created by unpaid assessments coming due after July 8, 1994, the date that the Department recorded its lien. Thus, the Department could satisfy its debt from the proceeds of a foreclosure sale before the Association could use those proceeds to recover monthly assessments that came due after July 8, 1994. The Department conceded that the Association's lien for assessments due before July 8, 1994, had priority over its lien.

The Department relied on section 3—10.2 of the Code, which grants the Department a lien with priority over "any lien thereafter recorded or filed" (305 ILCS 5/3—10.2 (West 1994)). Also, the Department invoked the following language in section 9(g)(1) of the Act:

"(1) If any unit owner shall fail or refuse to make any payment of the common expenses or the amount of any unpaid fine when due, the amount thereof together with any interest, late charges,

reasonable attorney fees incurred enforcing the covenants of the condominium instruments, rules and regulations of the board of managers, or any applicable statute or ordinance, and costs of collections shall constitute a lien on the interest of the unit owner in the property prior to all other liens and encumbrances, recorded or unrecorded, except only \*\*\* (b) encumbrances on the interest of the unit owner recorded prior to the date of such failure or refusal which by law would be a lien thereon prior to subsequently recorded encumbrances." 765 ILCS 605/9(g)(1) (West 1996).

The Association moved for summary judgment, asserting that, as a matter of law, the full amount of its lien under section 9 of the Act had priority over the Department's competing lien. According to the Association, its lien arose on October 15, 1993, when the unit owners first became delinquent on their assessments. An affidavit the Association's president filed February 11, 1997, detailed the assessments and other expenses the Association claimed. These included the cost of packing and storing the owners' personal property and repairing the unit, all of which the Association did pursuant to the forcible entry and detainer judgment; legal fees from July 1993 through the present; and past-due maintenance fees for October 1993 through February 15, 1997.

In response, the Department argued first that, under *St. Paul Federal Bank for Savings v. Wesby*, 149 Ill. App. 3d 1059 (1987), a condominium association's lien does not arise before assessment payments are in default. Therefore, according to the Department, the Association's lien could not have priority over the Department's lien insofar as the former lien was based on assessments not payable until after July 8, 1994. The Department argued secondly that the Association's lien did not cover some of the Association's claimed expenses, such as repairing the unit, because these costs were not "common expenses," an "unpaid fine," or "interest, late charges, reasonable attorney fees \*\*\* [or] costs of collections" (765 ILCS 605/9(g)(1) (West 1996)). Furthermore, there was no evidence of how much of these charges came due before the Department recorded its lien.

After argument, the court granted the Association's summary judgment motion and entered a judgment of foreclosure and sale (see 735 ILCS 5/15—1506 (West 1996)). In concluding that all of the Association's lien had priority over the Department's lien, the court analogized foreclosing the lien to foreclosing a mortgage. In each situation, the monthly increase in the amount of money in default eats into the money available to satisfy a lien that arose after the initial default. The court also ruled that the Act, "at least in spirit," allowed the Association to collect what it spent to maintain the unit after it took possession.

The court added that, as a matter of public policy, denying full priority to a condominium association's lien would work a severe hardship on the member unit owners. By law, a condominium association must maintain common areas while relying wholly on the condominium units as security for the substantial expenses it thereby incurs. The trial court reasoned that, as a condominium association is a far smaller group than the taxpaying public, the latter is in a better position to absorb the hardship from unsatisfied judgments, and spreading such costs among the whole public is fairer than endangering the association's ability to meet its obligations. After the trial court denied its motion to reconsider, the Department appealed.

The parties recognize, as did the trial court, that whether and to what extent a condominium association's common expense lien has priority over the Department's public aid lien is an issue of first impression. The Department argues first that the association's lien trumps the Department's lien only insofar as it relates to assessments that came due before the Department recorded its lien. The Department observes that section 9(g)(1) refers specifically to a unit owner's failure to make "any payment of the common expenses *** *when due*" and makes "*the amount thereof*" a lien on the property (emphasis added) (765 ILCS 605/9(g)(1) (West 1996)). Furthermore, the Department notes, this lien is inferior to encumbrances "recorded *prior to the date of such failure or refusal*" (emphasis added) (765 ILCS 605/9(g)(1) (West 1996)). From this phraseology, the Department concludes that each default, which occurs only after a payment is due, creates a lien that may or may not be prior to the Department's, depending on when the Department recorded its lien.

Following the trial court's reasoning, the Association analogizes the obligation to pay assessments per the condominium declaration to the obligation to make monthly payments under a mortgage instrument. Thus, the Association analogizes its security interest to that created by a mortgage and its right to foreclose and collect upon default to a mortgagee's right to collect and foreclose upon the mortgagor's default on a payment. According to the Association, only one default is necessary to create a lien on any undue assessments; insofar as priority is concerned, all defaults relate back to the initial one that triggered the Act's protections. For the reasons that follow, we agree with the Association.

■ We believe that each party sets forth a plausible reading of section 9(g)(1). The language *could* be read to create an individualized lien for each defaulted payment as it comes due. However, we *could* also read section 9(g)(1) to discuss a single continuing obligation, created upon the first default but expandable depending on later defaults, that the Association may enforce by its lien.

Because the language is susceptible to more than one meaning, we must engage in statutory construction. Our ultimate goal of course is to ascertain and effectuate the intent of the legislature. *In re Marriage of Mitchell*, 181 Ill. 2d 169, 173 (1998). We may consider that the legislature did not intend inconvenient or unjust results. *McNamee v. Federated Equipment & Supply Co.*, 181 Ill. 2d 415, 423-24 (1998).

We believe that the legislature meant the statute to function as the Association urges. We agree with the trial court that there is a reasonably serviceable analogy between the foreclosure of a mortgage (involving the security for a debt created by the mortgage loan) and the foreclosure of a condominium association's lien for common expenses (involving the security for a debt created by a default on the obligation under the condominium declaration). More crucially, we agree with the trial court that to give section 9(g)(1) the meaning the Department urges would work a needlessly harsh result. The condominium association relies exclusively on members' payments to fulfill obligations that are set by law (and practical necessity). To allow other parties' potentially unlimited claims to take priority over the association's might well put the association in an impossible position.

The creation of such perils is not necessary to allow claimants such as the Department here to protect their interests. Under section 9(j) of the Act, an encumbrancer of a condominium unit may request the condominium association to set forth the unpaid common expenses for the unit. If the association does not comply within 20 days, its lien on the unpaid common expenses that come due prior to the request become subordinated to the encumbrancer's lien. 765 ILCS 605/9(j) (West 1996). Otherwise, as is true in the mortgage setting, the encumbrancer may pay the overdue common expenses and thereby give its lien priority. 765 ILCS 605/9(j) (West 1996).

This section allows lienholders such as the Department here to minimize their risk by acting promptly before the unpaid assessments become excessively onerous. Also, we read this section to imply that, absent such action by the lienholder, overdue association payments can have priority over nonassociation liens even if these liens were recorded before the due date of the payments. This reinforces our conclusion that the overdue payments relate back to the original date that the Association's lien was perfected, *i.e.*, the date of the first default.

We do not believe *Wesby* compels a different result. *Wesby* does stand for the proposition that there is no lien until there is a debt or some other obligation; therefore, merely filing the condominium declaration does not create a lien. *Wesby*, 149 Ill. App. 3d at 1067. However, the character of the association's lien was not further in issue in *Wesby*, and we believe that opinion leaves the question here unresolved.

We hold that the Association's lien has priority over the Department's lien and that this priority extends to all overdue common expense payments that the Association's foreclosure suit seeks to recover. The trial court properly included all these payments in the Association's lien. However, the trial court also found that the Association's lien under section 9(g) of the Act also included a variety of other expenses, including attorney fees, the costs of repairing the DaSilvas' unit, and the cost of storing items. This brings us to the second issue on appeal: whether the trial court improperly applied section 9 to expenses to which the Association's lien does not extend. We hold that the court did err in including certain expenses in calculating the Association's statutory lien and that a remand is necessary so the court may determine the exact amount of the Association's lien.

This issue is also one of statutory construction, particularly of section 9's treatment of assessments of common expenses. We keep in mind that a court should read all portions of an act in relation to each other and as part of a coherent whole. *McNamee*, 181 Ill. 2d at 428; *In re A.P.*, 179 Ill. 2d 184, 197 (1997).

Section 9(g)(1), as pertinent here, restricts the Association's lien to the amount of unpaid "common expenses or the amount of any unpaid fine when due, *** together with any interest, late charges, reasonable attorney fees *** and costs of collections." 765 ILCS 605/9(g)(1) (West 1996). This language restricts a condominium association's lien to *common expenses* and fines and the costs the condominium association incurs in collecting overdue common expenses and fines. Section 9(a), which requires each unit owner to pay his proportionate share of the common expenses, defines this proportionate share as a ratio of the unit owner's "percentage of ownership in the *common elements* set forth in the declaration." (Emphasis added.) 765 ILCS 605/9(a) (West 1996). (Section 9(e) also allows the assessment of individual units for the costs involved with limited common elements. 765 ILCS 605/9(e) (West 1996). These limited common elements are actually a portion of the common elements, not parts of the units. See 765 ILCS 605/2(s) (West 1996).) Section 9, read as a whole, plainly has as its focus the assessment and collection of the expenses for maintaining the common elements, including the limited common elements that serve a particular unit, not expenses uniquely associated with a particular unit itself.

We think it plain that neither the overdue common expenses and fines nor the cost associated with recovering these obligations encompasses the expenses an association incurs in repairing a particular unit of which it has taken possession or in storing goods from that unit. These costs are not common expenses and have nothing to do

with the maintenance of the common elements. They do not benefit the general class of unit owners either directly or in proportion to the unit owners' respective interests in the property. Although the Association's spending for repair and storage ultimately resulted from the DaSilvas' failure to pay their assessments, this extra cost cannot reasonably be called "common expenses" or the "costs of collection" of the common expenses (see 765 ILCS 605/9(g)(1) (West 1996)). Whatever measures the Association has to collect them, they do not factor into the lien created by section 9(g)(1). Thus, the Association may not claim that any security interest it has for these costs has priority over the Department's lien.

We also hold that the trial court could not properly award the Association all its attorney fees, some of which must have resulted from collecting sums the trial court erroneously included under the Association's lien. Also, it is not clear whether the trial court adequately determined to what extent the Association's attorney fees and other costs were otherwise reasonable. Therefore, on remand, the trial court should decide the Association's reasonable attorney fees for work done in recovering the defaulted assessments.

The judgment of the circuit court of Du Page County is affirmed in part and reversed in part, and the cause is remanded.

Affirmed in part and reversed in part; cause remanded.

GEIGER, P.J., and DOYLE, J., concur.