# Illinois Official Reports

## Appellate Court

***Andersonville South Condominium Ass'n v. Federal National Mortgage Co.*,
2017 IL App (1st) 161875**

| | |
|---|---|
| Appellate Court Caption | ANDERSONVILLE SOUTH CONDOMINIUM ASSOCIATION, Plaintiff-Appellee, v. FEDERAL NATIONAL MORTGAGE COMPANY, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-16-1875 |
| Rule 23 order filed<br>Motion to publish allowed<br>Opinion filed | August 16, 2017<br><br>October 5, 2017<br>October 11, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 16-M1-706345; the Hon. Maritza Martinez, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Ralph T. Wutscher, Jeffrey T. Karek, and Stuart Miles, of Maurice Wutscher LLP, of Chicago, for appellant.<br><br>Daniel Kaufman, of Ira T. Kaufman P.C., of Chicago, for appellee. |

Panel                          JUSTICE FITZGERALD SMITH delivered the judgment of the court, with opinion.

Presiding Justice Cobbs and Justice Pucinski concurred in the judgment and opinion.

## OPINION

¶ 1      This cause of action arises from a forcible entry and detainer action (735 ILCS 5/9-101 *et seq.* (West 2014)) filed by the plaintiff, Andersonville South Condominium Association (condominium association or association) against the defendant Federal National Mortgage Association[1] (Fannie Mae), seeking possession of the real property located at 1315 West Winnemac Avenue, Unit 2, Chicago IL 60640 (the condominium unit) and damages for withholding possession. After the cause was continued several times and discovery was issued to the condominium association, Fannie Mae filed an emergency motion for a continuance of the trial date. After Fannie Mae failed to appear in court for presentment of its emergency motion, the trial court held that the original trial date would stand. After a bench trial, the trial court awarded judgment in favor of the condominium association against Fannie Mae. On appeal, Fannie Mae contends that the trial court erred when (1) it denied its request for a continuance of the trial so that it could obtain discovery from the condominium association prior to trial; (2) it awarded the condominium association monthly late charges assessed at 4% of the past due assessments, which ultimately amounted to more than 1.5 times the assessments owed; and (3) it awarded the condominium association repair costs for the unit, which are not part of any statutory lien under section 9(a) of the Condominium Property Act (Act) (765 ILCS 605/9(a) (West 2014)). For the reasons that follow, we affirm.

¶ 2                                I. BACKGROUND

¶ 3      The record before us reveals the following facts and procedural history. The condominium unit is part of a six-unit condominium building comprising the condominium association and was originally owned by Steven Meyers. After the original lender filed a mortgage foreclosure action against Meyers, Fannie Mae purchased the unit at a judicial sale on July 21, 2015 (case No. 11 CH 27494).

¶ 4      On April 13, 2016, the condominium association filed a forcible entry and detainer action against Fannie Mae, seeking possession of the condominium unit and damages in the sum of $63,513.33, plus future rents for withholding possession between July 21, 2015, and March 4, 2016.[2]

¶ 5      On April 27, 2016, the cause was continued to May 11, 2016, for status. On May 11, 2016, the trial court ordered Fannie Mae to file an appearance, pleadings, motions, or discovery by May 25, 2016, and set a trial date for June 1, 2016.

---

[1]We note, and the parties do not dispute, that the defendant, Federal National Mortgage Association (Fannie Mae), was incorrectly sued here as "Federal National Mortgage Company."

[2]It appears from the record that, at this point in time, the condominium association had already filed and won a forcible entry and detainer action against Meyers and was in possession of the unit.

¶ 6		On May 24, 2016, Fannie Mae filed an emergency motion for a continuance of the June 1, 2016, trial date. In that motion, Fannie Mae acknowledged that it was served with a summons and complaint on April 14, 2016. However, Fannie Mae asserted that—although it was granted until May 25, 2016, to file an appearance, pleadings, motion, or discovery—a trial date was set for June 1, 2016, which did not give it sufficient time to prepare for trial. Furthermore, Fannie Mae alleged that it had served the condominium association with discovery on May 23, 2016, and needed the association's responses to that discovery to gather documentation necessary to prepare for trial. Accordingly, Fannie Mae argued that it lacked material evidence necessary to present an appropriate defense at trial and asked the trial court to grant a continuance pursuant to section 2-1007 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1007 (West 2014)), and Illinois Supreme Court Rule 231(a) (eff. Jan. 1, 1970).

¶ 7		In support of its emergency motion, Fannie Mae attached numerous exhibits, including, *inter alia*, (1) Fannie Mae's interrogatories and requests to produce and to admit served on the condominium association on May 23, 2016, and (2) an affidavit by Fannie Mae's attorney, attesting to the service of the discovery on that date and the necessity of the responses to discovery as "material evidence" in the case.

¶ 8		Fannie Mae's emergency motion for a continuance was set for presentment on May 31, 2016.

¶ 9		Prior to the hearing for the presentment of its emergency motion, Fannie Mae, on May 25, 2016, filed its answer and affirmative defenses to the forcible entry and detainer action. In this pleading, Fannie Mae alleged that, after it purchased the condominium unit at a judicial sale, it requested from the condominium association a payoff statement for the assessments due and owing on the condominium unit. In response, on February 1, 2016, Fannie Mae received a ledger from the condominium association in the amount of $23,895.18 and a signed W-9 tax form dated February 1, 2016. Fannie Mae further alleged that only a month later, on March 4, 2016, the condominium association sent it a demand for possession (hereinafter the demand letter), stating that the amount due and owing by Fannie Mae was now $63,213.33. According to a new ledger attached to the condominium association's demand letter, the condominium association owed through February 2016: (1) $25,073.64 for unpaid assessments, (2) $39,963.23 for late fees, and (3) $8973.57 for "cleaning, repairs, appliances" and other miscellaneous "unit refurbishment[s]."[3] In its pleading, Fannie Mae explained that, according to the condominium association's bylaws, the late fees were calculated at 4% of the outstanding balance from December 2015 through February 2016.

¶ 10		According to the pleading, after Fannie Mae disputed the amount owed, the condominium association sent Fannie Mae an email claiming that, pursuant to our supreme court's decision in *1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 2015 IL 118372, the condominium association held a statuary lien on the condominium unit in the amount of $63,213.33.

¶ 11		Based on the aforementioned, Fannie Mae asserted three affirmative defenses, namely (1) that the condominium association failed to provide it with an accurate accounting of the

---

[3]We note that the $63,213.33 amount demanded is less than the addition of unpaid assessments, late fees, and repair/cleaning costs because, as reflected by the ledger, in coming to that amount, the condominium association subtracted from the unit's account all debt payments (presumably paid by the original unit owner), rental recoupment, and electric and gas bills.

amounts due and owing and that its claims were barred by the equitable doctrines of waiver, laches, and/or unclean hands; (2) that the cumulative assessment of late fees constituted an unenforceable penalty; and (3) that the damages for repairs to the unit were not part of any permissible statutory lien.

¶ 12    On May 31, 2016, Fannie Mae failed to appear for the presentment of its emergency motion seeking a continuance of the trial date. Accordingly, the trial court denied the emergency motion and ordered that the trial date of June 1, 2016, stand.

¶ 13    On June 1, 2016, the matter proceeded to a bench trial. Although we are without a transcript of that bench trial, Fannie Mae has provided this court with a certified bystanders report as to what transpired on that date. See Ill. S. Ct. R. 323(c) (eff. Dec. 13, 2005). According to the bystanders report, before the trial court heard any testimony, Fannie Mae once again made an oral request for a continuance of the trial date. Fannie Mae argued that it had issued discovery to the condominium association on May 23, 2016, and that the responses to that discovery were necessary for it to prepare its defense. Fannie Mae asserted that, without the outstanding discovery responses, it lacked material evidence and information concerning exhibits and witnesses, particularly with respect to the amounts of past due assessments and the calculation of late fees.

¶ 14    Fannie Mae further argued that, because the May 11, 2016, order allowed it to file any "appearance pleadings motions or discovery" until May 25, 2016, the trial judge entering that order must not have intended the matter to proceed to trial on June 1, 2016.

¶ 15    After reviewing the common law record half sheet for May 11, 2016, and noting that the trial judge on call that date was very meticulous with her notes, the trial court stated that the half sheet did not reflect that discovery was to issue, but did indicate that trial was to proceed on June 1, 2016. The trial court then inquired from the condominium association's counsel whether he reviewed the May 11, 2016, order before it was entered. The condominium association's attorney stated that Fannie Mae's attorney drafted that order, but that he could not recall whether he reviewed the order before it was entered.

¶ 16    After arguments, the trial court denied Fannie Mae's motion to continue the trial. The court stated that Fannie Mae had not complied with either section 2-1007 of the Code (735 ILCS 5/2-1007 (West 2014)), or Illinois Supreme Court Rule 231(a) (eff. Jan. 1, 1970), so as to permit a continuance. The trial court then passed the matter until the end of its call to conduct the trial.

¶ 17    According to the bystanders report, at the end of the court call, the matter was recalled for trial. Fannie Mae again objected to the trial proceedings going forward and requested an extension of the trial date. The trial court stated that it would proceed to trial, unless the parties were willing to settle, as the matter was properly set for trial. Fannie Mae stated that it needed the condominium association's responses to discovery to determine an appropriate settlement figure, if possible, and could not settle at this time. Fannie Mae conceded that it owed "some money" to the condominium association for assessments but explained that it took issue with the amount of late fees charged and needed information regarding the association's calculation of those fees to prepare its defense.

¶ 18    The condominium association objected to a continuance, noting that Fannie Mae had repeatedly appeared in court with freshly assigned attorneys who were unprepared for court and Fannie Mae confirmed the same. The condominium association stated that its treasurer, Stew Peabody, had previously provided Fannie Mae with information regarding the unit's

account (including ledgers). In addition, the condominium association argued that Peabody had taken the day off work to testify at trial. Furthermore, because the association was comprised of only six units, it argued that any delay in payment of the amounts owed would be harmful to the association.

¶ 19 The trial court agreed with the condominium association and proceeded with a bench trial. The condominium association called Peabody as its first and only witness. Over Fannie Mae's objection, Peabody testified that he first came into contact with Fannie Mae when Fannie Mae's agent posted a notice on the unit's door in October 2015, indicating Fannie Mae's newly acquired ownership of the unit (as required under the Chicago's Protecting Tenants in Foreclosed Rental Property Ordinance (Chicago Municipal Code § 5-14-010 (added June 5, 2013)). That notice was introduced as an exhibit into the record. According to Peabody, the condominium association renovated and repaired the unit to lease it. The association recovered rents from the unit until Fannie Mae directed the tenants to remit rent payments directly to Fannie Mae.

¶ 20 Peabody further testified that the amounts owed by Fannie Mae as of February 2016 were $63,213.33. In support, he produced a ledger which he testified had previously been given to Fannie Mae and its agents and prior counsel. This ledger, introduced at trial as a business record, itemizes the expenses (including assessments and late fees) incurred by the association. Peabody also explained that the rent collected from the leasing of the unit provided an offset from the total balance for a period of time.

¶ 21 The condominium association next moved for the introduction of its declaration into evidence. Fannie Mae's counsel objected on the basis that he had been newly assigned to the case and had not had the opportunity to review this document. Over counsel's objection, the trial court entered the condominium declaration and bylaws into evidence, and Peabody testified that these documents provided for the imposition of assessments and late fees.

¶ 22 On cross-examination, Peabody was asked to explain the glaring difference between the $233 monthly assessment and the $930 late fee charged to the unit's account in February 2016. Peabody explained that the condominium declaration and bylaws provide for a late fee of 4% of the total balance due charged to the account on a monthly basis. Peabody acknowledged that the condominium declaration allowed the late fee to be compounded, but stated that he did not calculate the late fee that way.

¶ 23 After Peabody's testimony, the parties proceeded with arguments. The parties agreed that Fannie Mae could take possession of the unit because it intended to sell it, but disagreed as to the amount of damages owed by Fannie Mae. Fannie Mae argued, *inter alia*, (1) that the condominium association should be able to recover damages only for the period alleged in its complaint (from July 21, 2015, through March 4, 2016), (2) that the monthly late charges to the account were unreasonably high compared to the assessments, and (3) that the $8973.57 for repairs and renovation to the unit were not recoverable because they did not relate to the assessments concerning the common areas and were therefore not part of any statutory lien. The condominium association, on the other hand, argued that our supreme court's decision in *1010 Lake Shore*, 2015 IL 118372, permitted it to recover the preforeclosure assessments, as there was a statutory lien on the unit. In addition, the condominium association argued that the repairs and renovations were made to the unit for purposes of leasing it, so that the association could mitigate its damages.

¶ 24    After hearing arguments, the trial court entered judgment in favor of the condominium association in the amount of $68,231.45 including assessments, late fees, and costs of repairs and renovation to the unit. The amount included additional assessments and fees to bring the unit's account current to the date of trial. On the issue of possession, which was undisputed, the trial court entered an order in favor of Fannie Mae. Fannie Mae now appeals.

¶ 25                                    II. ANALYSIS
¶ 26                              A. Motion for a Continuance
¶ 27    On appeal, Fannie Mae first argues that the trial court erred when it denied its request for a continuance of the trial since, without responses to its timely-issued discovery, it was without material evidence with which to properly defend the cause of action. We disagree.

¶ 28    "It is well settled that a litigant does not have an absolute right to a continuance." *K&K Iron Works, Inc. v. Marc Realty, LLC*, 2014 IL App (1st) 133688, ¶ 22. The decision to grant or deny a motion for a continuance is within the sound discretion of the trial court, which will not be disturbed on appeal absent an abuse of discretion. *K&K Iron Works*, 2014 IL App (1st) 133688, ¶ 22. An abuse of discretion occurs when the trial court's ruling is arbitrary, fanciful, or unreasonable, or when no reasonable person would take the same view. *Seymour v. Collins*, 2015 IL 118432, ¶ 41. When reviewing for abuse of discretion, the appellate court does not substitute its judgment for that of the trial court or determine whether the trial court acted wisely. *John Crane Inc. v. Admiral Insurance Co.*, 391 Ill. App. 3d 693, 700 (2009).

¶ 29    Section 2-1007 of the Code generally states that the court has discretion to grant additional time for "the doing of any act or the taking of any step or proceeding prior to judgment" on good cause shown. 735 ILCS 5/2-1007 (West 2014). According to section 2-1007, the "circumstances, terms and conditions under which continuances may be granted, the time and manner in which application therefore shall be made, and the effect thereof, shall be according to rules." 735 ILCS 5/2-1007 (West 2014).

¶ 30    Illinois Supreme Court Rule 231(f) states that "[n]o motion for the continuance of a cause made after the cause has been reached for trial shall be heard, unless a sufficient excuse is shown for the delay." Ill. S. Ct. R. 231(f) (eff. Jan. 1, 1970). Our courts have interpreted this rule to mean that, once a case reaches the trial stage, a party seeking a continuance must provide the court with "especially grave reasons" for the continuance because of the potential inconvenience to the witnesses, the parties, and the court. *K&K Iron Works*, 2014 IL App (1st) 133688, ¶ 23 (quoting *In re Marriage of Ward*, 282 Ill. App. 3d 423, 430 (1996)).

¶ 31    Additionally, a party requesting a motion for continuance on account of an absence of material evidence must support the motion with an affidavit showing (1) that due diligence has been used to secure the evidence; (2) what facts the evidence consists of; (3) if in the form of testimony, the residence of the witness or, if unknown, that due diligence has been used to discover it; and (4) that the evidence can be obtained if more time is permitted. Ill. S. Ct. R. 231(a) (eff. Jan. 1, 1970). In such an instance, the decisive factor is whether the party moving for a continuance has shown a lack of diligence in proceeding with the litigation. *Ward*, 282 Ill. App. 3d at 431.

¶ 32    In the present case, after a review of the record, we find no abuse of discretion by the trial court. The record is fraught with evidence of Fannie Mae's lack of diligence in proceeding with litigation, so as to warrant the trial court's refusal to postpone trial. In that respect, the

record reveals that Fannie Mae made two separate requests for a continuance of the trial, first by way of a written emergency motion, for whose presentment it flagrantly failed to appear in court, and second by way of an oral request on the date of trial. During that second oral request, immediately preceding trial, Fannie Mae admitted to the trial court that, on numerous previous occasions, counsel freshly assigned to the cause had appeared before the trial court unprepared. In fact, counsel appearing that day on behalf of Fannie Mae himself admitted that he had just been assigned to the matter and had not had the opportunity to review even the condominium association's declaration and bylaws, which would have been available to Fannie Mae, its agents, and prior counsel, long before the trial date. Such apparent lack of diligence in proceeding with the litigation reasonably would have warranted the trial court's denial of a request for a continuance. This is particularly true where the condominium association appeared on the date scheduled for trial ready to proceed and its key witness, association treasurer, Peabody, had already been inconvenienced by taking a day off work to testify. Moreover, the only evidence being offered by the condominium association at trial consisted of its declaration and bylaws and the ledger detailing the amounts owed by Fannie Mae to the condominium association, which Peabody had tendered to Fannie Mae long before trial. As such, we find no abuse of discretion in the trial court's decision to proceed with trial.

¶ 33                      B. Late Charges Assessed

¶ 34    On appeal, Fannie Mae next contends that the trial court erred in awarding the condominium association $68,231.45 in damages, including $43,832.65 in late charges stemming from delinquent preforeclosure assessments and calculated at 4% of the owed assessments. Fannie Mae argues that, because the total late charges added to more than 1.5 times the amount of the assessments owed ($24,398.80), they were unreasonably high and their sole purpose was to ensure performance by the unit owner, so as to constitute an unenforceable penalty. For the reasons that follow, we disagree.

¶ 35    At the outset, we note that whether the condominium association was entitled to late charges for preforeclosure assessments under the Act (765 ILCS 605/9(g) (West 2014)) is a legal question that we review *de novo*. *Wing Street of Arlington Heights Condominium Ass'n v. Kiss the Chef Holdings, LLC*, 2016 IL App (1st) 142563, ¶ 13. The amount of any such late charges, however, awarded after a bench trial is reviewed for manifest weight of the evidence. *Brynwood Co. v. Schweisberger*, 393 Ill. App. 3d 339, 351 (2009).

¶ 36    In awarding the condominium association $68,231.45, including $43,832.65 in late charges, the trial court relied on our supreme court's decision in *1010 Lake Shore*, 2015 IL 118372, and held that the preforeclosure assessments owed (including any late charges) were a statutory lien on the property pursuant to section 9(g)(3) of the Act (765 ILCS 605/9(g)(3) (West 2014)), which Fannie Mae failed to extinguish by not paying any assessments following its purchase of the unit at the judicial foreclosure sale.

¶ 37    In *1010 Lake Shore*, 2015 IL 118372, our supreme court considered whether an association's lien for unpaid assessments was extinguished by virtue of a judgment of foreclosure entered on a condominium unit, notwithstanding the fact that the purchaser at the judicial sale did not pay assessments beginning the first month following the sale as required under section 9(g)(3) of the Act (765 ILCS 605/9(g)(3) (West 2014)). In that case, a mortgagee-bank purchased the unit at a foreclosure sale, but failed to pay assessments that accrued following the sale. *1010 Lake Shore*, 2015 IL 118372, ¶¶ 3-4. The association later

sought to collect not only the assessments accruing since the date of the sale, but also those that accrued prior to the sale, including late charges assessed at $50 per month. *1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 2014 IL App (1st) 130962, ¶ 6.

¶ 38 The mortgagee-bank maintained that the association's lien was extinguished, like other liens on the property, by virtue of the judgment of foreclosure. Thus, the mortgagee contended that, notwithstanding its liability for postsale assessments, it could not be held liable for delinquent presale assessments incurred by the prior owner. *1010 Lake Shore*, 2015 IL 118372, ¶ 7.

¶ 39 Our supreme court disagreed, holding that the Act's provisions conditioned the extinguishment of the association's lien for presale assessments on the foreclosure purchaser's payment of assessments due following the sale. *1010 Lake Shore*, 2015 IL 118372, ¶¶ 24-25. The court found that the mortgagee-bank's failure to confirm the extinguishment of the association's lien by paying postforeclosure sale assessments rendered it liable for the entirety of the association's lien—*i.e.*, the presale assessments, including the late charges. *1010 Lake Shore*, 2015 IL 118372, ¶ 41.

¶ 40 Applying our supreme court's decision in *1010 Lake Shore*, 2015 IL 118372, to the present case, we find no error in the trial court's conclusion that Fannie Mae was responsible for the preforeclosure assessments, including the delinquent late charges, by virtue of the fact that it failed to pay any postsale assessments so as to confirm the extinguishment of the condominium association's lien on the unit.

¶ 41 Fannie Mae nonetheless cites to *Hidden Grove Condominium Ass'n v. Crooks*, 318 Ill. App. 3d 945 (2001), for the proposition that the unreasonably high amount of late charges and the compounding nature in which they were calculated rendered the late charges an unenforceable penalty. We disagree and find that case inapposite.

¶ 42 In *Hidden Grove*, the condominium association's bylaws provided that, if a unit owner did not timely pay the $88.25 monthly assessment, the association would charge a monthly $25 late fee (*i.e.*, a 28% interest charge). *Hidden Grove*, 318 Ill. App. 3d at 946. In that case, the unit owner paid the association $1176 in assessments, covering approximately 14 months of assessments that she had not paid. *Hidden Grove*, 318 Ill. App. 3d at 946. However, because none of those monthly payments had been timely, the association charged the unit owner with a late fee for every month she failed to pay the assessment. *Hidden Grove*, 318 Ill. App. 3d at 946. Accordingly, she was charged with $25 for the first month and an additional $25 for each month thereafter. So for example, when she did not pay her January assessment until October, the unit owner was charged a $225 late fee (or nine months of continuous late fees) against her January assessment. *Hidden Grove*, 318 Ill. App. 3d at 947. After the association successfully sued the unit owner to recoup the late charges, the unit owner appealed. *Hidden Grove*, 318 Ill. App. 3d at 946.

¶ 43 The appellate court overturned the award, finding that the amount was not a reasonable forecast of just compensation for the amount caused by the breach, and the harm caused by the late assessments was neither difficult nor impossible to estimate. *Hidden Grove*, 318 Ill. App. 3d at 947. The appellate court noted that typically an interest charge to recover the lost value of money ranges between 5% and 10%, but that in that case, the late fee of $25 constituted a 28% interest charge. *Hidden Grove*, 318 Ill. App. 3d at 947. The court further held that, while the initial $25 charge (even at the 28% interest rate) could be justified as reasonable to cover the amount of expenses, administrative costs, and lost income attributable to pursuing delinquent

- 8 -

payments, the compounding of an additional $25 late fee (*i.e.*, a 28% interest charge) for each month the assessment was not paid could not relate to any recoverable expense of a late payment. *Hidden Grove*, 318 Ill. App. 3d at 947. Accordingly, the court concluded that the "compounding nature of the late charge" was "merely an attempt to secure timely payment of the assessment," and was therefore unreasonable. *Hidden Grove*, 318 Ill. App. 3d at 947.

¶ 44 Unlike the 28% late interest charged in *Hidden Grove*, in the present case, the monthly late fee was calculated at a 4% interest charge, a rate lower than the 5-10% interest rate the court in *Hidden Grove* found acceptable. In addition, unlike *Hidden Grove*, where the monthly assessments remained the same over a period of time, the monthly assessments in this case, progressively increased from $82.29 in December 2005 to $233 in February 2015, but the late fee assessed remained at 4%. What is more, in *Hidden Grove*, the harm caused by late assessments was not difficult to estimate, since the unit owner remained in the unit and continued to pay her assessments, albeit in arrears. In contrast, according to the ledger introduced at trial, the unit owner here stopped paying assessments in March 2010, and once the unit went into foreclosure, no one paid any assessments or late charges even after it was sold at a judicial sale in July 2015. As such, the harm caused to the association in the instant case was not simple to estimate. For all of these reasons, we find *Hidden Grove* inapplicable to the cause at bar, and find no error in the trial court's award of $43,832.65 in late charges.

¶ 45                                    C. Repairs to the Unit

¶ 46 On appeal, Fannie Mae next argues that the trial court erred in awarding the association $8973.57 in costs and fees incurred in renovating and repairing the unit for lease because those costs were not part of the association's "common expenses" and as such were not part of any statutory lien to the property. The condominium association argues that, based on the evidence presented at the bench trial, the trial court properly awarded these costs, as incurred by the association in mitigating its damages. The association asserts that these costs were necessary to repair the unit so that it could be rented, and that the rental income was used to offset the amount of past due assessments, as reflected by the unit's ledger, before Fannie Mae took over the rental income. For the reasons that follow, we agree.

¶ 47 "The trier of fact is responsible for determining the amount of damages, and its determination should not be altered unless the determination is not supported by the evidence or is obviously the result of passion or prejudice." *Todd W. Musburger, Ltd. v. Meier*, 394 Ill. App. 3d 781, 803 (2009) (citing *Stein v. Spainhour*, 167 Ill. App. 3d 555, 561 (1988)).

¶ 48 Section 9-111.1 of the Forcible Entry and Detainer Act provides that upon entry of a judgment in favor of the condominium association for possession of a unit under the Condominium Property Act, the condominium association has the right to rent out the unit to mitigate damages and apply the newly acquired rental income to any delinquent assessments. 735 ILCS 5/9-111.1 (West 2014) ("the board of managers shall have the right and authority, incidental to the right of possession of a unit under the judgment, but not the obligation, to lease the unit to a bona fide tenant"); see also *100 Roberts Road Business Condominium Ass'n v. Khalaf*, 2013 IL App (1st) 120461, ¶ 46.

¶ 49 The testimony offered by the condominium association's treasurer, Peabody, at the bench trial established that the condominium association incurred costs to repair and refurbish the unit so as to rent it and mitigate its damages. Peabody testified from the association's ledger as to how much money the association spent in mitigating its damages, and the ledger established

how those rental amounts were used to offset the delinquent assessments until Fannie Mae purchased the unit at the judicial foreclosure sale and instructed the tenant to remit all rents to it. Fannie Mae called no witnesses and presented no evidence to rebut this testimony and documentary evidence. Instead, when asked by the trial judge why the amount for repairs and renovations should not be awarded to the association as an attempt to mitigate damages, it argued that the association assumed the risk of the costs of the repairs and renovations. In addition, Fannie Mae argued that it would have either undertaken the repairs or sold the unit "as is." The trial court rejected Fannie Mae's argument and ruled in favor of the condominium association. We find nothing manifestly erroneous in this conclusion. In fact, we believe it reflects the court's refusal to permit Fannie Mae, who failed to pay a single assessment for nearly a year after its purchase of the unit at the judicial sale, to take advantage of the condominium association's attempt to mitigate its damages, either by benefiting from the rental income offsetting the delinquent assessments or by subsequently collecting the rent from the new tenant, while still litigating the matter with the condominium association. This is particularly true where the ledger introduced at trial reflects that the rental income recouped by the condominium association and used to offset the delinquent assessments ($7450) nearly equals the cost incurred by the association in repairing the unit so that it could be rented ($8973.57).

¶ 50    In coming to this conclusion, we have considered the decision in *Lake Hinsdale Village Condominium Ass'n v. Department of Public Aid*, 298 Ill. App. 3d 192 (1998), cited to by Fannie Mae and find it inapplicable to the facts at bar. That case involved a dispute over the priority of liens and not a dispute between a condominium association and a purchaser of a unit at a judicial sale who declined to pay assessments for nearly a year but benefited from the rents collected on the unit repaired and refurbished by the condominium association to mitigate its damages.

¶ 51                                    III. CONCLUSION
¶ 52    For all of the aforementioned reasons, we affirm the judgment of the circuit court.

¶ 53    Affirmed.