2026 IL App (1st) 250010-U

FIFTH DIVISION
June 26, 2026

No. 1-25-0010

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| BOARD OF DIRECTORS OF PRAIRIE DISTRICT HOMES, RESIDENCES CONDOMINIUM ASSOCIATION, | ) ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Appellee, | ) ) ) | |
| v. | ) ) | No. 2023 CH 01552 |
| CHARLES C. DAVIS, | ) ) | The Honorable Cecilia A. Horan, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE MIKVA delivered the judgment of the court.
Presiding Justice Mitchell and Justice Oden Johnson concurred in the judgment.

**ORDER**

¶ 1   *Held*: The judgment of the circuit court is affirmed where the circuit court properly exercised its discretion to award attorney fees.

¶ 2   This case stems from an enforcement action initiated by the Board of Directors (the board) of the Prairie District Homes-Tower Residences Condominium Association (the association), seeking access to Charles C. Davis's condominium unit to inspect and repair a leaking toilet that had caused water damage within the building. The circuit court awarded attorney fees to the board under section 9(g)(1) of the Illinois Condominium Property Act (ICPA) (765 ILCS 605/9(g)(1)

(West 2022)) and the association's Declaration of Condominium (declaration). Mr. Davis disputes the necessity of the enforcement action as well as the basis for and reasonableness of the fee award. For the reasons that follow, we affirm the court's order awarding attorney fees.

¶ 3                                     I. BACKGROUND

¶ 4     On February 17, 2023, the board filed a verified complaint for declaratory, injunctive, and other relief in the circuit court, seeking access to Mr. Davis's unit to make necessary repairs as well as attorney fees and costs. In its complaint, the board alleged that on December 28, 2022, it requested access to several units in the Prairie District Homes-Tower Residences Condominium complex to determine the source of a water leak which had damaged the ceiling in the unit directly below unit 604. Unit 604 was owned and occupied by Mr. Davis.

¶ 5     According to the complaint, all units surrounding Mr. Davis's had been accessed and ruled out as the source of the leak. Mr. Davis, however, twice refused access to his unit. The board alleged that Sections 2.10 and 3.02(b) of the declaration and section 18.4(j) of the ICPA 765 ILCS 605/18.4(j) (West 2022). required Mr. Davis to allow the board to enter and perform an inspection and any necessary repairs. The declaration was attached as an exhibit to the complaint. According to the complaint, Mr. Davis's unit was confirmed to be the source of the leak "[o]n or about December 29, 2022, [when Mr.] Davis shut off the water supply to the toilet in the bathroom of the Unit, and the water leak stopped."

¶ 6     On December 30, 2022, the association's property manager instructed Mr. Davis to hire a licensed plumber to repair the toilet by January 2, 2023, which he failed to do. On January 6, 2023, counsel for the board sent a written demand to Mr. Davis via email requesting access to his unit before 5:00 PM on January 10, 2023, to repair his toilet. In the letter, which was also attached as an exhibit to the complaint and listed a yahoo.com email address in the header, the board threatened

to file a lawsuit "seeking an injunction authorizing the Association's representatives to forcibly enter your unit to make necessary repairs" as well as attorney fees if Mr. Davis did not comply. According to the complaint, on January 9, 2023, Mr. Davis met with its president, who agreed to extend the compliance deadline to February 1, 2023, but Mr. Davis never granted access to the unit.

¶ 7     Mr. Davis was served with process in this lawsuit via email and text message on July 20, 2023, but did not appear in the circuit court or answer by the August 21, 2023, deadline. On September 19, 2023, the board filed a motion for default judgment. On September 25, 2023, with Mr. Davis appearing *pro se* over Zoom, the circuit court entered an order continuing the motion for default judgment and noting that "Counsel for Plaintiff shall reach out to Defendant Charles C. Davis via email at \*\*\*@gmail.com within seven days to determine whether this matter may be resolved."

¶ 8     On October 20, 2023, Mr. Davis filed his "answer/response to complaint/petition" in which he denied many of the board's allegations and legal claims. According to Mr. Davis, he did not allow the building to access his unit at the time of the leak because he was immunocompromised and had thoroughly inspected the unit himself and did not detect any damage. He explained that he does not use the toilet in that bathroom, uses that bathroom only for storage, and keeps the water turned off. Also, since the leak began, building staff had had access to his unit on multiple occasions for other reasons and did not raise this issue with him. Specifically, according to Mr. Davis's answer, multiple professionals from the building including plumbers and an engineer visited between May 12, 2023, and June 15, 2023, to repair broken pipes elsewhere in his unit. Building staff also entered Mr. Davis's unit on separate occasions to power wash his terrace and replace his HVAC filter. Mr. Davis also said in his answer that he was unaware of his

noncompliance and this lawsuit, in part because he changed his email address and instructed the building to send future correspondence to a gmail.com address. Mr. Davis attached as exhibits several emails from the building to his new email address as well as copies of email correspondence between him and the property manager, dated June 15, 2023, confirming that the work on the other pipes in his unit had been completed.

¶ 9 No transcripts of any court hearings are part of the record on appeal. Between November 3, 2023, and January 16, 2024, the circuit court held several status hearings where Mr. Davis sought additional time to retain counsel, which he was ultimately unable to do. On January 23, 2024, the court entered an agreed order which stated, "[Mr. Davis] shall provide access to Unit 604 no later than February 9, 2024, and shall allow the Association to inspect and repair, if necessary, the toilet therein. [Mr. Davis] will not interfere with such access or repair but may be present during the inspection/repair." A status hearing was set for February 13, 2024. An order dated that day reflects that the court ordered Mr. Davis to provide access to his unit by 5:00 pm that day.

¶ 10 On March 6, 2024, the board filed its petition for attorney fees and costs, in which it sought $11,936.00 in attorneys' fees and $877.68 in costs incurred in bringing the lawsuit against Mr. Davis. According to the board, it was entitled to fees under the ICPA and the declaration. The board attached to its petition an affidavit from its counsel stating that Mr. Davis did not comply with the January 23, 2024, agreed order and that the board then obtained the February 13, 2024, order, which Mr. Davis finally complied with. The affidavit also described why the claimed fees

were reasonable and necessary, given their experience and the scope of the matter, as well as detailed billing records showing 29.9 hours of work on the case.

¶ 11    On April 29, 2024, Mr. Davis filed a response to the petition for fees in which he argued the lawsuit was "unwarranted and should have never been filed" because his toilet was not the source of the leak and he had given building staff access to his unit multiple times. Mr. Davis disputed that he had prevented staff from entering his unit or evaded service of this lawsuit. Mr. Davis also explained how his unsuccessful efforts to retain counsel hampered his ability to effectively respond to the board's case. In response, the board submitted email receipts showing that the initial demand letter, which had only noted Mr. Davis's yahoo.com email address on the heading, had actually been sent to both his yahoo and gmail accounts. The board also reiterated that its fees were reasonable and argued that they were a direct result of Mr. Davis's efforts to evade and prolong the litigation.

¶ 12    On December 2, 2024, the circuit court granted the board's petition for fees and awarded it a total of $12,840.68. The court explained that "Section 9(g)(1) of the Illinois Condominium Property Act and Section 7.06 of the Association's Declaration of Condominium entitled Plaintiff to recover its reasonable attorneys' fees and costs." The circuit court also noted that the fees and costs "are reasonable and were necessary in the prosecution of this action."

¶ 13    This appeal followed.

¶ 14                                    II. JURISDICTION

¶ 15    The circuit court granted the board's petition for fees on December 2, 2024, and Mr. Davis timely filed his notice of appeal January 2, 2025. We have jurisdiction pursuant to Illinois Supreme

Court Rule 301 (eff. Feb. 1, 1994) and Rule 303 (eff. July 1, 2017), governing appeals from final judgments entered by the circuit court in civil cases.

¶ 16                                III. ANALYSIS

¶ 17     On appeal, Mr. Davis argues that for the court to issue its February 13, 2024, order, it would have had to accept the board's version of events over his, which he argues was improper at this stage. Mr. Davis also argues that the court's basis for its award of fees was, therefore, improper and the fees were unreasonable. For the following reasons, we disagree and affirm.

¶ 18                       A. The Effect of the Agreed Order

¶ 19     According to Mr. Davis, "the [February 13, 2024, order] appears potentially to have been a judgment on the pleadings or, alternatively, a temporary restraining order," both of which he argues would be improper at this stage given that he denied many of the board's allegations. He claims that entering such an order denied him due process. But this mischaracterizes the circuit court's February 13, 2024, order. The court never entered a judgment on the pleadings or a temporary restraining order. Clearly, it would be improper to enter such an order without allowing Mr. Davis a full and fair hearing. However, no such ruling was necessary after Mr. Davis agreed to the January 23, 2024, agreed order and then failed to follow it which lead to the February 13, 2024, order.

¶ 20     While Mr. Davis now raises questions, which may be legitimate, about whether the January 23, 2024, order allowing access was necessary because he had previously allowed access to his unit, these questions become irrelevant because Mr. Davis entered into the agreed order. An agreed order is a recordation of a private, contractual agreement between parties and is not an adjudication of their rights. *In re Marriage of Watkins*, 2017 IL App (3d) 160645, ¶ 28. That agreement is conclusive on the parties and cannot be amended or set aside without the consent of each party or

6

a showing of fraud. *In re Marriage of Rolseth*, 389 Ill. App. 3d 969, 971 (2009). The agreed order in this case, therefore, was not a determination by the court that access to Mr. Davis's unit was necessary or that he had failed to provide access up until that point. Instead, it was a recordation of Mr. Davis's agreement to "allow the Association to inspect and repair, if necessary," the toilet in his unit by February 9, 2024. This was a new obligation that Mr. Davis agreed to, regardless of whether he had already offered access to his unit.

¶ 21    Mr. Davis does not argue that he complied with the terms of that agreed order or that the order was ambiguous. Instead, he only disputes whether any order was necessary. But the order was enforceable, regardless of whether it was necessary, because it was agreed to by the parties and adopted by the court.

¶ 22    The February 13, 2024, order became necessary because Mr. Davis did not follow the January 23, 2024, order.A court is vested with the inherent power to enforce its orders (*Smithberg v. Illinois Municipal Retirement Fund*, 192 Ill. 2d 291, 297 (2000)) and this includes the power to enforce agreed orders. See, *e.g.*, *Village of Lakemoor v. First Bank of Oak Park*, 136 Ill. App. 3d 35, 41 (1985) (finding that trial court had the power to order compliance with an agreed order). The court was therefore vested with power to enforce the agreed order of January 23.

¶ 23    There is no transcript or bystander's report from the February 13, 2024, court date. But that order appears to have become necessary because of the uncontested fact that Mr. Davis did not follow the dictates of the January 23 order. Absent any indication to the contrary in the record, we must presume the circuit court acted in conformity with the law and with a sufficient factual basis. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). Any doubts which may arise from the fact that we have no record of what was said at the February 13, 2024, court hearing must, therefore, be resolved against Mr. Davis, the appellant. *Id*. at 392. We therefore read the record as

the court having entered the February 13, 2024 for the proper purpose of enforcement of the January 23, 2024, agreed order.

¶ 24                                     B. Fees

¶ 25    Mr. Davis raises several arguments concerning the court's fee award. He contends that the fee award was not authorized by the statute cited by the court and was also not reasonable because many of the fees were incurred after he granted access to his unit. We find that the condominium declaration provided the court with a proper basis for the fee award and that the circuit court did not abuse its discretion in finding that award was reasonable.

¶ 26    Generally, parties are responsible for paying their own attorney fees in Illinois unless such an award is expressly authorized by statute or agreement. *Career Concepts, Inc. v. Synergy, Inc.*, 372 Ill. App. 3d 395, 405 (2007). The circuit court cited both the declaration and section 9(g)(1) of the ICPA as the basis for its award. We start with the condominium declaration.

¶ 27    A condominium declaration is a binding contract between the association and unit owners. *Wood v. Evergreen Condominium Ass'n*, 2021 IL App (1st) 200687, ¶ 17. The administration of a condominium is governed by its declaration, board rules and regulations, and bylaws. *Alliance Property Management, Ltd. v. Forest Villa of Countryside Condominium Ass'n*, 2015 IL App (1st) 150169, ¶ 27. The full scope of a condominium board's authority is determined by the ICPA, declaration, and bylaws, construed as a whole. *Id*.

¶ 28    We employ a two-part standard of review here. To the extent that the circuit court interpreted the terms of a statute or contract to authorize a fee award, our review is *de novo*. *Peleton, Inc. v. McGivern's Inc.*, 375 Ill. App. 3d 222, 225 (2007). To the extent that the circuit

court determined that the amount of the fees requested was reasonable, our review is for an abuse of discretion. *Id*. at 226.

¶ 29    Here, the declaration makes clear that the board may hold owners responsible for attorney fees incurred when enforcing its rules. Section 7.06 of the declaration, which the circuit court expressly relied on, states:

> "All expenses incurred by the Board in connection with the enforcement of the provisions of this Declaration or in connection with the exercise of its rights and remedies under this Article, including without limitation, court costs, attorneys' fees and all other fees and expenses *** shall be charged to and assessed against the defaulting Owner and the Condominium Association shall have a lien for all the same upon such Owner's Unit Ownership[.]"

Sections 2.10 and 3.02 of the declaration grant the board broad authority to conduct necessary maintenance work and access owners' units to do so. Mr. Davis was thus obligated to provide access to his unit to inspect and, if necessary, repair his toilet under this agreement, and the board was authorized to charge him the attorney fees it incurred in enforcing this obligation. The declaration provided the court with a proper basis for its fee award.

¶ 30    Mr. Davis argues that accepting the condominium declaration as the basis for the fee award "requires the resolution of disputed fact questions raised by the pleadings and fee petition." He suggests that these questions include whether access and repair work were necessary given that the leak had stopped, whether any property damage was likely, and whether he had in fact already given access to his unit. But the agreed order and order enforcing the agreed order are a sufficient basis on which the circuit court could conclude that the litigation was in fact necessary for the board to not only enter the unit but "inspect and repair, if necessary, the toilet therein." As noted

above, we must presume the circuit court acted in conformity with the law and with a sufficient factual basis when it entered the February 13, 2024, order. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). Any doubts which may arise from the incompleteness of the record must, therefore, be resolved against Mr. Davis, the appellant. *Id*. at 392.

¶ 31    Nothing in the record rebuts the presumption that the court's enforcement order had sufficient factual basis, i.e., was entered because the board still needed to get in there. And, as the board points out, the declaration broadly authorizes an award of fees spent on "enforcing" the rules of the association. There is nothing in the declaration to suggest any particular factual finding was necessary as a condition precedent to a fee award.

¶ 32    As to section 9(g)(1) of the ICPA, which the board and the court also relied on for support of the award, Mr. Davis correctly points out that it would not, by itself, authorize recovery of attorney fees beyond those associated with actions to recover unpaid assessments or fines. Section 9(g)(1) states,

> "If any unit owner shall fail or refuse to make any payment of the common expenses or the amount of any unpaid fine when due, the amount thereof together with any interest, late charges, reasonable attorney fees incurred enforcing the covenants of the condominium instruments, rules and regulations of the board of managers, or any applicable statute or ordinance, and costs of collections shall constitute a lien on the interest of the unit owner in the property[.]" 765 ILCS 605/9(g)(1) (West 2022).

As this court has explained, "Th[e] language [in section 9(g)(1)] restricts a condominium association's lien to common expenses and fines and the costs the condominium association incurs in collecting overdue common expenses and fines." *Lake Hinsdale Village Condominium Ass'n v. Department of Public Aid*, 298 Ill. App. 3d 192, 198 (1998). The board counters that under section

9.2(b), the attorney fees here became part of Mr. Davis's share of the common expenses. Section 9.2(b) provides that attorney fees incurred by the association "arising out of a default by any unit owner *** in the performance of any of the provisions of the condominium instruments, rules and regulations *** shall be added to, and deemed a part of, his respective share of the common expense." 765 ILCS 605/9.2(b) (West 2022).

¶ 33     We need not reconcile these two sections of the ICPA here. The only issue before us is whether there was a proper basis for the fee award. The condominium declaration provides an independent basis for the fee award.

¶ 34     Mr. Davis next argues that the fees and costs awarded to the board were not reasonable. The circuit court expressly found that the attorney fees and costs "are reasonable and were necessary in the prosecution of this action." The circuit court has "broad discretionary powers" in awarding attorney fees (*U.S. Fidelity & Guaranty Co. v. Old Orchard Plaza Ltd. Partnership*, 333 Ill. App. 3d 727, 740, (2002)) and we will reverse only if the court's decision was "arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the [circuit] court" (*People v. Stefanski*, 377 Ill. App. 3d 548, 550 (2007)). The board supported its petition with a sworn attorney affidavit detailing counsel's experience, hourly rates, and billing practices, as well as billing records reflecting 29.9 hours of work over the duration of the case.

¶ 35     Mr. Davis suggests that an evidentiary hearing on the fee petition was necessary because his response raised questions of fact. He points out that of the $12,840.68 awarded by the court, only about $3,200 was incurred through May 2023, which is when, according to Mr. Davis, he started giving the board access to his unit and any further litigation on the board's February 2023 complaint became unnecessary. But a court is not required to hold an evidentiary hearing on a fee petition. See, e.g., *Kellett v. Roberts*, 276 Ill. App. 3d 164, 174-75 (1995) (finding that an

11

evidentiary hearing on the amount of attorney fees was not necessary because the circuit court relied on an affidavit and a detailed time sheet from the petitioners' attorney, and the respondent was not denied an opportunity to present evidence).

¶ 36 We briefly address Mr. Davis's argument that Rule 137 sanctions be imposed on the board's counsel because it intentionally misrepresented section 9(g)(1) and frivolously continued pursuing this litigation once it was no longer necessary. The purpose of the Rule 137 is to "discourage frivolous filings" and to "prevent parties from abusing the judicial process by imposing sanctions on those who file vexatious and harassing actions premised on unsupported allegations of fact or law." Ill. S. Ct. R. 137(a) (West 2022); *Rubin and Norris, LLC v. Panzarella*, 2016 IL App (1st) 141315, ¶ 49. The board's interpretation of section 9(g)(1) was not frivolous and more importantly it was not the only basis on which the board sought fees.

¶ 37 The board concludes its response brief by requesting that this court either award it fees on appeal or remand for the purpose of allowing it to file a fee petition in the circuit court. While we do not believe that we have any authority to deny the board from seeking additional fees in the circuit court, we note that Mr. Davis has already paid a significant amount in fees and has complied with the board's requests for entrance. This matter should end.

¶ 38 In sum, the condominium declaration provided the circuit court with a proper contractual basis for its award of attorney fees and Mr. Davis has not shown how the court abused its discretion in finding that award reasonable.

¶ 39                                IV. CONCLUSION

¶ 40 For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 41 Affirmed.